Rapaport Law Firm, PLLC  |  Attorneys at Law  |  One Penn Plaza  |  Suite 2430  |  New York, NY 10119  |  Tel 212.382.1600  |  Fax 212.382.0920  |  www.rapaportlaw.com

**Rapaport Law Firm**

Marc A. Rapaport*
Tel  (212) 382-1600
Fax (212) 382-0920
mrapaport@rapaportlaw.com

*Member NY & NJ Bars*

December 8, 2020

**BY ECF**

Hon. John P. Cronan
United States District Judge
Southern District of New York
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007-1312

      Re:    **Juan Artiles v. Superior One Management Corp., et al.**
               **Case No. 20-cv-01809 (JPC) (JLC)**

Dear Judge Cronan:

      This firm represents Plaintiff, Juan Artiles ("Plaintiff" or "Mr. Artiles") in the above-referenced matter, which involves claims for wage and hour violations. Plaintiff writes jointly with Defendants to request that the Court approve the settlement agreement (the "Agreement") reached by the parties herein as a fair and reasonable resolution of this matter. The parties participated in a court-referred mediation with Daniel Engelstein, Esq., an experienced mediator. This matter did not settle on the day of the mediation. But thereafter, the parties continued their negotiations, and were able to reach a settlement. The Agreement is submitted simultaneously with this letter as Exhibit 1 hereto. Plaintiff's counsel further requests that the Court approve our firm's attorneys' fees and costs.

      The Agreement reflects a desire by the parties to fully and finally settle Plaintiff's Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") claims.

      **I.**      **Introduction.**

      As Plaintiff's claims arise, in part, under the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq. ("FLSA"), the Agreement must be approved by this Court. *See Cheeks v. Freeport Pancake House, Inc.*, 796 F. 3d 199 (2d Cir. 2015). In evaluating whether a proposed settlement is fair and reasonable, "a court should consider the totality of circumstances including, but not limited to, the following factors: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in

Honorable John P. Cronan
United States District Judge
December 8, 2020

establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the produce of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion." *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335-336, (S.D.N.Y. 2012) (citations and quotation marks omitted).

## II. Summary of Plaintiff's Factual Allegations and Damage Calculations, and Defendants' Position and Legal Defenses.

### (1) Summary of Plaintiff's Allegations:

Mr. Artiles was employed by Defendants from March 2009 to January 27, 2020. He was the live-in superintendent of Defendants' 26-unit apartment building located 3102 Villa Avenue, Bronx, New York (the "Villa Building"). During the final month of his employment, Defendants designated Mr. Artiles as the superintendent of 3336 Perry Avenue in Bronx County (the "Perry Building"). In addition to his superintendent duties, Mr. Artiles performed repairs, demolitions and renovations at other buildings controlled by Defendants.

Defendants never provided Mr. Artiles with any way to report the number of hours worked per week. Defendants paid him the same, flat weekly paycheck regardless of the number of hours that he worked. Mr. Artiles alleges that he worked an average of 58 hours per week, without any compensation for the approximately 18 hours of overtime that he typically worked per week. The foregoing is based on Mr. Artiles' recollections, as there are no written records of time worked.

Plaintiff's damage calculations are guided by the rebuttable presumption in the Second Circuit that a fixed salary covers 40 hours. *See, e.g., Perez v. Platinum Plaza 400 Cleaners, Inc.,* No. 12-cv-9353, 2015 U.S. Dist. LEXIS 54066, *6-7 (S.D.N.Y. Apr. 24, 2015); *Keun-Jae Moon v. Gab Kwon,* 248 F. Supp. 2d 201, 207 (S.D.N.Y. 2002); *Giles v. City of New York,* 41 F. Supp. 2d 308, 316-217 (S.D.N.Y. 1999).

Because Mr. Artiles' weekly pay ($300.00 through 2019, then changed to $400.00) fell below the applicable New York minimum wage rate during the entire six-year limitations period, we calculated Plaintiff's top-line damages estimates by multiplying the applicable minimum wage rates by 1.5. Based on the foregoing, Plaintiff's counsel calculated that if Mr. Artiles were successful in establishing that he worked 18 hours of overtime per week throughout the six-year limitations period, he could potentially recover $127,999.00 for unpaid minimum and overtime wages, not including liquidated damages.[1]

Plaintiff's counsel calculated Plaintiff's top-line, potential damages for unpaid minimum wages and overtime as follows:

---

[1] During the mediation process, Plaintiff's counsel produced a week-by-week damages chart covering the entire limitations period. Because of annual increases in the applicable New York minimum wage rate, Plaintiff's top-line damages estimates increased year-over year. Full damages charts are available should the Court deem them necessary to assess the fairness of the Agreement.

2

Honorable John P. Cronan
United States District Judge
December 8, 2020

| Year | Minimum Wage Claim | Overtime Claim | Total |
|---|---|---|---|
| 2014 | $1,040.00 | $11,232.00 | $12,272.00 |
| 2015 | $2,600.00 | $12,285.00 | $14,885.00 |
| 2016 | $3,120.00 | $12,636.00 | $15,756.00 |
| 2017 | $7,280.00 | $15,444.00 | $22,724.00 |
| 2018 | $11,440.00 | $18,252.00 | $29,692.00 |
| 2019 | $10,400.00 | $21,060.00 | $31,460.00 |
| 2020 (Jan. 1 – 27) | $400.00 | $810.00 | $1,210.00 |
| | | | **$127,999.00** |

The foregoing is exclusive of liquidated damages and interest, and this assumes that Mr. Artiles would be able to prove that he worked 58 hours per week, every week during the six-year NYLL limitations period. If the Court were to decide that Mr. Artiles is exempt under New York's "janitor exemption," Mr. Artiles' claims would be limited to three years, and his potential damages would be lower.

*Wage Statement and Wage Notice Violations (NYLL).*

We place a settlement value of $10,000.00 on Plaintiff's claims for wage notice and wage statement violations, based on the following analysis:

*Wage Statement Violations:*

Plaintiff alleges that Defendants failed to provide him with wage statements at the end of every pay period that correctly identified the name of the employer; address of employer; rates of pay or basis thereof; regular hourly rate; whether paid by the hour, shift, day, week, salary, piece, commission, or other; number of overtime hours worked; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; and such other information as required by NYLL § 195(3). Pursuant to NYLL § 198(1-d), Mr. Artiles is entitled to statutory damages of $250.00 per workweek, up to a cap of $5,000.00.

3

Honorable John P. Cronan
United States District Judge
December 8, 2020

*Wage Notice Violations:*

In violation of NYLL § 191, Defendants failed to furnish Plaintiff, at the time of hiring (and annually for those years prior to the January 2015 amendment) or whenever there was a change to his rate of pay, with wage notices required by NYLL § 191. Due to Defendants' violation of NYLL § 195(1), Plaintiff is entitled to recover from Defendants liquidated damages: (a) for the time period commencing six years before the filing of this Complaint, through January 5, 2015, the sum $50 per work week, up to $2,500; and (b) from January 6, 2015 through the resolution of this case, $50.00 per work day, up to $5,000.00.

**(2) Defendants' Allegations:**

Defendants assert that Plaintiff is not entitled to any overtime pursuant to the New York Labor Law as janitors in residential buildings are exempt from overtime. 12 N.Y.C.C.R. § 141-1.4. As Plaintiff was the sole janitor in charge of the care and maintenance of each building he worked, he would be exempt from overtime pursuant to the New York Labor Law. 12 N.Y.C.C.R. § 141-3.4. Accordingly, it is Defendants' position that Plaintiff's overtime claims would at best go back two or three years (if willful) pursuant to the FLSA which would significantly decrease any damages Plaintiff would be entitled. Further, it is Defendants' position that the New York Labor Law treats janitors differently than other minimum wage employees as they are only entitled to be paid at a rate pursuant to the number of units in the building. See 12 N.Y.C.C.R. § 141-1.5 and 1.6. Defendants also assert that at best, Plaintiff would be entitled to overtime pursuant to the FLSA at the overtime rate prescribed by the FLSA ($10.88 an hour). Further, pursuant to the FLSA, Defendants would be able to take a credit for the reasonable value and fair cost for the lodging provided to Plaintiff.

Further, Defendants dispute that Plaintiff was not properly paid overtime or minimum wage and have asserted that Plaintiff never worked more than 40 hours in a week and that Plaintiff was paid for all hours worked. Defendants' position is that when Plaintiff reported that he worked more hours, Plaintiff was paid for such hours. Defendants strongly dispute the number of hours claimed by Plaintiff and assert that the job duties Plaintiff were assigned would require substantially fewer hours then the number of hours claimed by Plaintiff, and that Plaintiff's claim that he worked 58 hours a week is unbelievable. Defendants' position is that Plaintiff in fact never worked over 40 hours a week and Plaintiff has no valid overtime claim. Defendants further note that courts considering claims by janitors/superintendents have recognized the difficulty by plaintiffs to demonstrate that they actually worked overtime and/or the hours claimed. See e.g., *Daniels v. 1710 Realty, LLC* 2011 WL 3648245 (E.D.N.Y. 2011). Further, Defendants dispute Plaintiff's asserted start date of employment, Plaintiff's position that the amount paid each week was the same and allege that Defendants had no knowledge that Plaintiff worked over 40 hours a week and/or made Plaintiff "suffer work". Further, Defendants assert that to the extent there were any wage violations, such violations would not warrant liquidated damages because Defendants believed in good faith that they complied with the law.

Defendants do not dispute that such notices and wage statements were not provided to Plaintiff. However, Defendants contend as an affirmative defense that Plaintiff is not entitled to

4

Honorable John P. Cronan
United States District Judge
December 8, 2020

such statutory damages since Plaintiff was paid all compensation he was entitled to pursuant to law.

### III. The Agreement is Fair and Reasonable.

The parties represent to the Court that the settlement between the parties is a fair and reasonable resolution of a *bona fide* dispute reached as a result of a mediation session with an experienced mediator. In sum, the Agreement is the product of extensive and challenging negotiations. As reflected in the attached Agreement, the parties have agreed to settle the case for the sum of $60,000.00, payable in installments and secured by a confession of judgment.

After attorneys' fees and costs, Plaintiff receives payments totaling $39,900.00.

Plaintiff was present at the mediation, and he was fully able to (and did) participate in the negotiations. A licensed translator was present to ensure that Plaintiff fully understood and participated in the settlement discussions.

Plaintiff's counsel is seeking a contingent fee of slightly less than 30% ($16,977.65) of the net value of settlement, which is $56,877.65 (based on: $60,000.00 minus costs of $3,122.35). This amount is less than the 33.3% contingency fee provided by our firm's retainer agreement (Exhibit 2). Our firm requests reimbursement for costs/disbursements in the amount $3,122.35, which is largely attributable to service of process, mediation and translator fees. All of these expenses were necessary for the prosecution of Plaintiff's claims.

We believe that the Settlement Amount is fair and reasonable in light of the uncertainties associated with establishing Plaintiff's precise amount of overtime hours. *See Beckert v. Rubinov*, 15 Civ. 1951 (PAE), 2015 WL 8773460, at *2 (S.D.N.Y. Dec. 14, 2015)(finding that the "amount [plaintiff] would receive under the Agreement ($29,557.97) is a substantial proportion of the maximum possible recovery he identifies ($114,700)"). Here, Plaintiff concluded that he would face exceedingly difficult challenges recalling and establishing the number of hours that he worked during his employment.

The parties were able to reach an agreement while written discovery was ongoing - before incurring the costs of depositions, motion practice and trial. *See Burgos v. San Miguel Transp., Inc.*, 2016 U.S. Dist. LEXIS 166248, *6, 2016 WL 7015760 (S.D.N.Y. Dec. 1, 2016)(citing the relatively early stage of the case as one of the factors supporting the fairness of a settlement that was substantially below the amount that plaintiff initially contemplated). Furthermore, here, as in *Burgos*, there is no assurance that Plaintiff would be awarded liquidated damages under FLSA or NYLL if this matter were to proceed to trial, particularly in light of New York's Janitor Exemption.

### IV. Plaintiff's Counsel's Application for Attorneys' Fees.

Under both the FLSA and NYLL, Plaintiff is entitled to recover attorneys' fees and costs. Attorneys' fees in FLSA settlements are examined to ensure that the interests of plaintiff's counsel in his or her own compensation did not have an adverse impact on the extent of relief

5

Honorable John P. Cronan
United States District Judge
December 8, 2020

counsel obtained for the client. *See Wolinsky v. Scholastic*, 900 F.Supp.2d 332, 336 (S.D.N.Y. 2012).

Plaintiff's counsel represents Plaintiff on a contingent basis, pursuant to a retainer agreement, which provides for attorneys' fees of one-third of the net recovery. A copy of our firm's retainer agreement with Plaintiff is attached hereto as Exhibit 2. Our firm's time spent on this matter and the expenses that we reasonably incurred are set forth in the accurate, detailed and contemporaneous records attached hereto as Exhibit 3. The lodestar in the attached billing records (Ex. 3) is higher than the amount of fees requested. The requested fees are also less than the agreed 33.33% provided for in the retainer agreement (Plaintiff's counsel is requesting just under 30%), even though contingency fees of one-third are routinely approved in this Circuit. *Sierra v. Mid City Gym and Tanning LLC*, No. 16 Civ. 2892, 2017 WL 4862070 *4 (S.D.N.Y. Oct. 25, 2017); *Gaspar v. Personal Touch Moving, Inc.,* No. 13 Civ. 8187, 2015 WL 7871036 *2 (S.D.N.Y. Dec. 3, 2015).

The attorneys and staff at Rapaport Law Firm who were involved in this case, and whose time is reflected in the attached billing records, are:

1. **Marc Rapaport**

    I am the managing member of Rapaport Law Firm, which began as my solo practice in 1995. I have more than twenty years of experience litigating employment matters on behalf of employees in New York. I received a J.D. from Georgetown University Law Center in 1992. Thereafter, I worked as a Staff Attorney for the United States Department of Justice in Washington, D.C. I represent employees in a broad range of discrimination and wage/hour matters. I am an active member of the National Employment Lawyers Association and the National Employment Lawyers Association New York. I believe that my clients also benefit from my broader experience beyond the field of employment law, including my experience litigating commercial disputes in state and federal courts.

    For more than 25 years, I have endeavored to represent immigrant workers who often find it difficult to obtain skilled legal representation. In recent years, I have particularly focused on representing immigrant workers (superintendents and porters) in the building service industry, which have included, by way of example, the following matters: Armas et al. v. SKYC Management LLC et al., SDNY 2014 CV 6360 (PGG)(HBP); Castillo et al. v.140 Ash Associates, LLC, et al., EDNY 16-cv-5216 (FB)(PK); and Salas et al. v. Phoenix ACV Construction Services, LLC et al., SDNY 16-cv-08066 (LAP). My requested hourly rate of $400.00 has been approved by multiple judges in the Second Circuit. *See, Montalvo v. Arkar Inc.*, 2018 U.S. Dist. LEXIS 79667 at *5 (S.D.N.Y. May 10, 2018).

2. **Karina Gulfo**

6

Honorable John P. Cronan
United States District Judge
December 8, 2020

Ms. Gulfo has been a paralegal at Rapaport Law Firm since August 2018. Ms. Gulfo speaks fluent Spanish. Because of her language skills, Ms. Gulfo served a crucial and effective role in our firm's representation of Plaintiff. Ms. Gulfo has performed FLSA damage calculations in multiple FLSA/NYLL cases since she joined Rapaport Law Firm.

3. **Marcela Cabezas**

Ms. Cabezas has been a paralegal at Rapaport Law Firm since 1998. Ms. Cabezas graduated from New York Institute of Technology with a B.S., and she also has a certificate from the New York Paralegal School. Ms. Cabezas speaks fluent Spanish. Because of her language skills and extensive experience providing paralegal support in wage and employment cases, Ms. Cabezas plays a crucial and effective role in our firm's representation of immigrant workers. For nearly two decades, she has served as a point of contact for our firm's Spanish-speaking clients.

We respectfully request that the Court approve the Agreement, as well as the amount of legal fees requested herein. Should Your Honor have any questions or concerns regarding this settlement, the parties are happy to discuss them. The parties thank the Court for its attention to this matter.

Respectfully yours,

/s/

Marc A. Rapaport

Encs. (Exhibits 1 – 3)

cc:   Joshua Marcus, Esq. (*Via ECF only*)